IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–001305–CMA–KMT

STEPHEN MARTINEZ,

      Petitioner,

v.

STEVE HARTLEY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case comes before the court on Petitioner's Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (Doc. No. 2, filed June 20, 2007). Pursuant to the Order of Reference dated July 18, 2007 (Doc. No. 6), this court has reviewed the Application, Respondents' Answer ("Answer") (Doc. No. 10, filed August 16, 2007), Petitioner's Traverse to Respondent's Answer ("Traverse") (Doc. No. 14, filed September 12, 2007), the pertinent parts of the state court record, the case file, and the applicable law, and is sufficiently advised to recommend that Petitioner's Application be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

Petitioner is currently incarcerated at the Limon Correctional Facility of the Colorado

Department of Corrections in Limon, Colorado.  (Application at 9.)  On January 7, 2000, a jury

found Petitioner guilty as charged of first-degree murder of a child by a person in a position of

trust, pursuant to Colo. Rev. Stat. § 18–6–401(7)(c) (2000).[1]  (*Id*. at 1–2.)  The trial court

sentenced Petitioner to a life sentence without the possibility of parole.  (*Id*. at 2.)

On October 17, 1998 Petitioner was babysitting his girlfriend's four-month-old daughter

from a previous relationship.  (Answer, Ex. D at 1.)  Petitioner called the 911 operator after the

child had allegedly started choking on a bottle.  (*Id*.)  Petitioner reported that she had gone pale

and was cold.  (*Id*.)  Paramedics arrived at the scene and took the child to the hospital, where she

later died.  (*Id*.)  Thereafter, police officers arrived at the scene; Petitioner gave a statement to

the officers reiterating what he told to the emergency operator.  (*Id*.)

In a later videotaped interview, Petitioner began to recant his earlier statements.  (*Id*.)  He

first posited that the child's injuries may have been due to an incident from a few weeks prior,

where Petitioner tripped while feeding the child, resulting in a minor head wound.  (*Id*.)

Eventually, after police questioned his story, Petitioner admitted that on the day in question, after

---

[1]At various times in the state court record and their briefs here, both Petitioner and Respondents assert that Petitioner was convicted under Colo. Rev. Stat. § 18–3–102(1)(f) (2000) rather than § 18–6–401(7)(c).  The court notes that § 18–6–401(7)(c) incorporates § 18–3–103(1)(f) to define the crime of "knowingly caus[ing] the death of a child who has not yet attained twelve years of age and the person committing the offense is one in a position of trust with respect to the child" as first-degree murder.  Therefore, for purposes of this Recommendation, the court uses § 18–6–401(7)(c) and § 18–3–103(1)(f) interchangeably.

growing frustrated with the child's crying, he shook her and accidentally hit her head against the crib.  (*Id*. at 2.)  The coroner testified that the child suffered an occipital skull fracture, localized subdural and subarachnoid hemorrhages, optical nerve and retinal hemorrhages, a reported "history of acceleration/deceleration," and scalp bruises.  The cause of death was determined to be complications from a blunt trauma to the head.  (*Id*.)

The primary issue at trial was Petitioner's state of mind at the time of the incident.  (*Id*.) Petitioner's theory was that he shook the child with minimal force, and accidentally struck her head on the crib.  (*Id*.)  The prosecution argued that Petitioner had acted knowingly because the injuries sustained by the child were severe, and would have required that Petitioner strike the child's head against the crib with a high degree of force.  (Answer, Ex. A at 5.)  The jury was instructed on criminally negligent child abuse resulting in death, reckless child abuse resulting in death, manslaughter, criminally negligent homicide, and first-degree murder—knowingly causing the death of a child by a person in a position of trust.  (Answer, Ex. D at 2.)

Following his conviction, Petitioner took a direct appeal raising four issues: (1) that the trial court violated his constitutional right to a fair trial and reversibly erred by admitting expert testimony concerning "known fact patterns" that can cause subdural hematomas—specifically, falls from multi-story buildings and high-speed automobile accidents—as proof that Petitioner used a high degree of force and thus caused the child's death knowingly; (2) that the prosecution and investigating officers' use of inconsistent positions to manipulate the trial violated Petitioner's constitutional right to due process and a fair trial; (3) that Colo. Rev. Stat. § 18–6–401 violates the constitutional guarantee of equal protection by establishing disparate

punishments for identically-situated offenders, solely because the offender was in a position of

trust; and (4) that § 18–6–401 violates equal protection by predicating disparate punishment on

the basis of an impermissible distinction between different classes of children.  (Answer, Ex. A.)

On December 20, 2001, the Colorado Court of Appeals reversed, holding that the trial court's

admission of expert testimony as to other accidents that can cause subdural hematomas was

irrelevant, prejudicial, and likely to confuse and mislead the jury, as those examples were not

representative of the minimum amount of force necessary to cause such an injury.  (Answer, Ex.

D at 3–12.)  Additionally, because it was likely to arise on retrial, the Court of Appeals also

denied Petitioner's claims that Colo. Rev. Stat. § 18–6–401 violated equal protection, holding

instead that the harsher penalties for offenders in a position of trust and for causing the death of a

child under twelve years old were not based on nominal or arbitrary distinctions as required for

an equal protection violation.  (*Id*.)  On March 11, 2002, the People petitioned the Colorado

Supreme Court for certiorari review on the expert testimony issue.  (Answer, Ex. E.)  The

Colorado Supreme Court granted certiorari review on August 5, 2002.  (Answer, Ex. F.)  On

June 30, 2003, the Colorado Supreme Court reversed the Colorado Court of Appeals, and

reinstated Petitioner's conviction, holding that the expert testimony was admissible for the

purpose of serving as the basis of the expert's opinion under Colorado Rule of Evidence

("C.R.E.") 702.  (Answer, Ex. J.)  Petitioner's Petition for Rehearing was denied on August 18,

2003.  (Answer, Ex. L.)  On November 13, 2003, on remand, the Colorado Court of Appeals

denied Petitioner's remaining claim on appeal, holding that the prosecution's taking of a position

on the evidence that was inconsistent with that taken by the investigating officers while

4

interviewing Petitioner did not violate Petitioner's due process rights.  (Answer, Ex. N.)  The

Colorado Supreme Court denied certiorari review on this issue on April 19, 2004.  (Answer, Ex.

P.)

On December 6, 2004, Petitioner filed a *pro se* motion for post-conviction relief,

pursuant to Colo. R. Crim. P. 35(c), claiming: (1) his trial counsel was ineffective for a number

of reasons, including a failure to present expert testimony to counter the prosecution's experts;

(2) he was not advised of his Fifth Amendment *Miranda* rights until after he had made

inculpatory statements, and that the police never informed him that those statements could not be

used against him; (3) his sentence was unconstitutionally enhanced (a) because the jury was not

required to make specific findings that the child was less than twelve years old and that he was in

a position of trust, and (b) because, by passing Colo. Rev. Stat. § 18–3–102(1)(f), the state

"legislated away" the "requisite" mens rea of "with intent" and "after deliberation" for first-

degree murder, and allowed for a lesser mens rea of "knowingly," solely because of the victim's

age and because the offender was in a position of trust.  (*See* Petition for Postconviction Relief,

*People v. Martinez,* No. 98CR5061, (Denver Dist. Ct. 2000).)  This motion was denied without a

hearing on May 12, 2005.  (*See* Order Denying Defendant's Motion for Post-Conviction Relief,

*Martinez,* No. 98CR5061.)

On June 12, 2006, Petitioner filed a motion for extension of time to file an appeal from the denial of his post-conviction motion with the Colorado Court of Appeals.[2] (Traverse at 25–26.) In support of this motion, Petitioner asserted that he was never served with the trial court's May 12, 2005 order denying his post-conviction motion, and that he only became aware that his post-conviction motion was denied after his family called the court and learned that the motion had been denied. (*Id.*) On June 23, 2006, the Colorado Court of Appeals ordered that it would defer ruling on Petitioner's motion for extension of time to file his appeal and remanded to the trial court for findings, supported by an affidavit, as to whether Petitioner was served with a copy of the May 12, 2005 order.[3] (Answer, Ex. R.) On March 8, 2007, the trial court made the requested findings—supported by an affidavit of the trial court judge's judicial assistant—that the May 12, 2005 order was "probably mailed to [Petitioner]." (Answer, Ex. S.) Relying on the trial court's findings, on March 20, 2007, the Colorado Court of Appeals denied Petitioner's motion for extension of time to file a notice of appeal, finding that Petitioner had failed to show good cause for filing his notice of appeal out of time. (Answer, Ex. T.) On April 24, 2007, Petitioner sought certiorari review or, alternatively, an order to show cause, before the Colorado Supreme Court from the Court of Appeals' denial of his motion for extension of time to file an

---

[2] Petitioner first filed a motion for extension of time to file an appeal with the trial court on May 6, 2006. (Traverse at 23.) This motion was denied on May 15, 2006 for lack of jurisdiction. (*Id.* at 26.)

[3] On August 23, 2006, the Court of Appeals issued another order reiterating that the trial court should make findings as to when the defendant was served with a copy of the order, and ordering that this should be done with "all due speed." (*See* Order, *People v. Martinez,* 06CA1215 (Colo App. 2006).)

appeal.  (Answer, Ex. U.)  The Colorado Supreme Court denied certiorari review, and declined

to issue a show cause order, on May 16, 2007.  (Application at 12.)

Petitioner filed his present Application on June 20, 2007 in this court claiming: (1) his

Fourteenth Amendment right to a jury trial was violated by the introduction of evidence of the

force necessary to produce subdural hematomas because it was prejudicial, irrelevant, and

confused the jury; (2) his Fourteenth Amendment due process rights were violated when the

prosecution employed a theory of the case that was inconsistent with that of the investigating

officers to convict Petitioner; (3) Petitioner's equal protection rights were violated when he was

sentenced under the provisions of Colo. Rev. Stat. §18–6–401(7)(c); (4) his trial counsel was

ineffective in violation of his Sixth Amendment rights; (5) his Fifth Amendment rights were

violated when he was interrogated without a proper *Miranda* advisement and information from

the pre-*Miranda* statement was used to obtain a confession following a proper *Miranda*

advisement; and (6) his right to trial by jury on elements necessary to constitute first-degree

murder was violated because Colo. Rev. Stat. § 18–6–401(7)(c) impermissibly reduces the mens

rea necessary to constitute first-degree murder from "with intent" and "after deliberation" to

"knowingly."

## II.    *LEGAL STANDARDS*

### A.    **Pro Se** *Petitioner*

Petitioner is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

7

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a Petitioner can prove facts that have not been alleged, or that a defendant has violated laws in ways that a Petitioner has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a Petitioner's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the Petitioner in the absence of any discussion of those issues").  The Petitioner's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     *Title 28 U.S.C. § 2254*

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court."  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).  A decision is contrary to Federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent.

*Williams*, 529 U.S. at 406.  A decision involves an unreasonable application of Federal law when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.  *Id.* at 409.  However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly.  Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, a presumption of correctness exists regarding trial and appellate court findings of fact pursuant to this Court's habeas review.  *Sumner v. Mata*, 455 U.S. 591, 592–93 (1982).  As such, Petitioner bears the burden of rebutting this presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

## III.  ONE-YEAR LIMITATION PERIOD FOR FILING APPLICATION FOR FEDERAL HABEAS RELIEF

Respondents challenge the timeliness of Petitioner's Application under the one-year statute of limitation for filing a federal habeas corpus application, established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and enacted at 28 U.S.C. § 2244(d)(1).  (Answer 10–12.)  Respondents contend that the Colorado Supreme Court denied certiorari on April 19, 2004, and that the statute of limitations began to run 90 days later on July 19, 2004 after Petitioner's opportunity to seek review of his conviction before the United States Supreme Court expired.  (*Id.*)  Respondents acknowledge that, pursuant to 28 U.S.C.§

9

2244(d)(2), the limitations period was tolled from December 6, 2004 until May 12, 2005, while

Petitioner sought post-conviction relief.  (*Id.*)  However, Respondents assert that the statute of

limitations was not further tolled while Petitioner attempted to appeal the trial court's ruling out

of time because an untimely appeal is not a properly filed post-conviction motion for purposes of

tolling the limitations period.  (*Id.*)  Accordingly, Respondents maintain that the limitations

period for seeking federal habeas relief expired on December 23, 2005, and that therefore

Petitioner's present Application, filed June 20, 2007, was untimely under the AEDPA statue of

limitations.  (*Id.*)

In his Traverse, Petitioner contends that his Application should not be barred before this

court because he is entitled to equitable tolling of the AEPDA statute of limitations.[4]  (Traverse

at 2–5.)  More specifically, Petitioner maintains that because the trial court failed to serve him

with a copy of the May 12, 2005 order denying his post-conviction motion, and he was not able

to get a copy of the order until over a year later—after the AEDPA statute of limitations had

expired—he is entitled to an equitable tolling of the limitations period.  (*Id.*)  Petitioner also

asserts that, upon discovering that his post-conviction motion had been denied, he took

---

[4]  In his Traverse, Petitioner argues that he is entitled to "equitable tolling" pursuant to 28 U.S.C. § 2244(d)(1)(B)—which provides that the statute of limitations does not run until a state imposed impediment that unconstitutionally prevents the timely filling of a petition for habeas relief is lifted. However, § 2244(d)(1)(B) provides for statutory, and thus legal, tolling of the limitations period.  Consequently the court construes Petitioner's Traverse to assert that Petitioner is entitled to both equitable and statutory tolling.  Nonetheless, because Petitioner is entitled to equitable tolling of the AEDPA statute of limitations, the court does not address whether Petitioner would also be entitled to statutory tolling under § 2244(d)(1)(B).

"immediate action to correct" the trial court's mistake by moving the Colorado Court of Appeals to allow him to file an appeal out of time.  (*Id*. at 3.)

Equitable tolling of the AEDPA statute of limitations may be appropriate where a prisoner's failure to timely file an application for habeas relief is the result of "extraordinary circumstances beyond his control."  *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).  "In particular, a prisoner's lack of knowledge that the state courts have reached a final resolution of his case" may rise to the level of the extraordinary circumstances necessary to merit equitable tolling.  *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001).  However, to invoke equitable tolling, a prisoner must also demonstrate that he pursued his claims with reasonable diligence.  *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  The reasonable diligence requirement necessitates that a prisoner "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing."  *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).  Consequently, if a prisoner has not "exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  *Id*.; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.")

Lastly, Petitioner bears the burden of demonstrating that equitable tolling is appropriate in this action. *Miller*, 141 F.3d at 977. Altogether, the court should balance the equities of the case to determine whether equitable tolling is merited. *Woodward,* 263 F.3d at 1143.

The court finds that Petitioner has sufficiently demonstrated that he was not notified that his post-conviction motion was denied. Concededly, Petitioner was unable demonstrate good cause to the Colorado Court of Appeals as to why his appeal from the trial court's denial of his post-conviction motion was untimely. (Answer, Ex. T.) However, there the trial court's findings that Petitioner was "probably mailed" the May 12, 2005 order were uncontroverted. (*See* Answer, Ex. S.) Here, Petitioner has produced a recently obtained grievance form, granted and signed by prison staff, which affirmatively demonstrates that Petitioner did not receive any legal mail between May 12, 2005 and May 31, 2005—the time during which Petitioner presumably should have received notice that his post-conviction motion was denied. (Traverse at 22.) The court finds that this grievance form is significantly more probative of whether Petitioner was notified that his post-conviction motion had been denied than the trial court's findings—which were largely based on a legal assistant's "habit and routine"—that Petitioner was "probably" notified of the denial of his post-conviction motion. Thus, the court finds that by demonstrating that he did not receive any legal mail from May 12, 2005 until May 31, 2005, Petitioner has sufficiently established that he was not notified of the final resolution of his post-conviction motion. Accordingly, the court finds that Petitioner has demonstrated the requisite extraordinary circumstances to invoke equitable tolling of the AEDPA statute of limitations.

To invoke equitable tolling, Petitioner must also demonstrate that he pursued his claims with reasonable diligence.  Although over a year passed from the time the trial court denied his post-conviction motion until Petitioner actually discovered that his motion had been denied, the court does not find that Petitioner was manifestly unreasonable in waiting to inquire into the status of his case.[5]  Instead, the court recognizes that a significant amount of time often passes after a prisoner files for post-conviction relief before the state court has the opportunity to rule on such motions, and therefore repeated status inquiries may in fact constitute an unreasonable burden on the trial court.  Thus, rather than the steps taken attempting to ascertain the disposition of his post-conviction motion, the court finds the more relevant evidence to evaluating whether Petitioner was reasonably diligent in pursuing his claims are the actions Petitioner took *after* learning that his post conviction motion had been denied.  Here the court finds without hesitancy that Petitioner diligently pursued his claims.  Upon discovering that his post-conviction motion had been denied in June of 2006 (Traverse at 18), Petitioner promptly filed a motion for extension of time to file an appeal with the Colorado Court of Appeal on June 12, 2006

---

[5]  Moreover, the court also acknowledges that in his petition for a writ of certiorari to the Colorado Supreme Court from the Court of Appeals' denial of his motion for extension of time to file an appeal, Petitioner maintains that he did contact the trial court to discover the status of his motion and received no response.  (Answer, Ex. U at 4.)  However, because the court finds that the relevant inquiry for determining whether a prisoner acts with reasonable diligence pertains to the steps taken *after* the discovery of the extraordinary circumstances that prevented the filing of a habeas petition, the court does not determine whether Petitioner actually made such a status inquiry.

(Traverse at 24–25).[6]  Thereafter, during the nine months which the Court of Appeals deferred

ruling on the motion to permit the trial court to determine whether Petitioner was served with the

order denying his post-conviction motion, Petitioner filed three separate inquiries as to the status

of the trial court's findings.  (Traverse at 27–29.)  Then, on April 24, 2007, just over a month

after the Court of Appeals denied Petitioner's motion for extension of time to file a notice of

appeal, Petitioner sought certiorari review from the Colorado Supreme Court.  (Answer, Ex. U.)

Lastly, after the Colorado Supreme Court denied his petition for certiorari on May 16, 2007,

(Application at 12)  Petitioner filed his present Application with this court on June 20, 2007, just

over a month later.  Therefore, the court finds that, after discovering that he was not notified that

his post-conviction motion was denied, Petitioner demonstrated reasonable diligence in pursuing

his claims and attempting to rectify the failure of the trial court to properly serve him.

Accordingly, after balancing the equities in this case, the court finds that Petitioner is

entitled to equitable tolling of the AEDPA statute of limitations from the time his post-

_____

[6] The court recognizes that there is some discrepancy as to when Petitioner discovered that his post-conviction motion had been denied, and when he moved to file an appeal out of time.  More specifically, Petitioner filed a motion with the trial court to file an appeal out of time on May 6, 2006, which is prior to June 2006, when he alleges he discovered that his post-conviction motion had been denied.  However, the affidavit in which Petitioner attested that he learn his post-conviction motion had been denied in June 2006 was filed almost a year later with the Colorado Supreme Court.  Moreover, the court recognizes that it is often difficult for a prisoner to keep an accurate record of all of dates pertinent to his case, and thus Petitioner likely invoked June 2006 as the time when he was notified of the final disposition of his postconviction motion from memory.  Because the difference between the date he filed his motion with the trial court  to file an appeal out of time and the date he attested to have learned that his motion had been denied is less than a month, the court does not find this discrepancy to be fatal to Petitioner's claim for equitable tolling.

14

conviction motion was denied until the Colorado Supreme Court denied certiorari review of his

motion for extension of time to file a notice of appeal out of time.  The court also finds that when

Petitioner filed his motion for post-conviction relief he had 226 days remaining on the

limitations period to file for federal habeas relief.  Therefore, because Petitioner filed his present

Application 35 days after he was denied certorari review by the Colorado Supreme Court, the

court finds the present Application to be timely pursuant 28 U.S.C. § 2244(d)(1).

## IV.     *EXHAUSTION OF STATE COURT REMEDIES PURSUANT TO 28 U.S.C. § 2254(b)(1)*

Respondents next maintain that this court should dismiss Petitioner's first, third, and

sixth claims as they have been procedurally defaulted.  (Answer at 12–19.)  More specifically,

Respondents argue that because Petitioner's first and third claims were not raised as an issue of

federal law in state court, and his sixth claim was not raised in state court at all, Petitioner failed

to exhaust these claims pursuant to 28 U.S.C. § 2254(b).  (*Id.*)  Respondents then argue that

because state procedural rules would now bar Petitioner from seeking further relief in state court,

these claims have been procedurally defaulted before this court, and therefore should be

dismissed.  (*Id.*)

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be

granted unless it appears that the applicant has exhausted state remedies or that no adequate state

remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*,

526 U.S. 838, 842 (1999); *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir.

1994).  To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to

15

the state courts, in a manner that gives the state courts an "opportunity to pass upon and correct allegedly violations of a prisoner's federal rights." *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Duncan v. Henry*, 513 U.S. 364, 365.  The fair presentation necessary to satisfy the exhaustion requirement requires a petitioner to *raise* a claim as a federal issue in state court; it is "obvious" that fair presentation "cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Smith v. Digmon,* 434 U.S. 332, 333 (1978).  Moreover, although "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts," *Anderson v. Harless*, 459 U.S. 4, 6 (1982), fair presentation does not require a habeas petitioner to cite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S.270, 278 (1971); *Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir. 1989) (holding that exhaustion does not require "invok[ing] talismanic language").  Rather, the relevant inquiry is whether the "substance" of the petitioner's claim has been presented to the court in a manner sufficient to put the state court on notice of the federal constitutional claim. *Nichols,* 867 F.2d at 1252 (holding that a docketing statement referring to the Fifth Amendment was sufficient to put the state court on notice that petitioner was asserting a federal basis for a claim); *see also Hawkins v. Mullin,* 291 F.3d 658, 664 (10th Cir. 2002) (holding that a prisoner's state court pleading's reference to "due process" and "the Eighth Amendment's freedom from cruel and unusual punishment" was sufficient to put the state court on notice that he was asserting a federal claim).

Finally, "the exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  "[A] state prisoner bringing a federal habeas

corpus action bears the burden of showing that he has exhausted available state remedies."
*Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

    *A.    First Claim*

    Petitioner first asserts that his constitutional right to a jury trial was violated when the trial court admitted evidence of other "known fact patterns" that can produce the subdural hematomas—one of the injuries suffered by the child victim—as this evidence was prejudicial, irrelevant, and confused the jury. (Application at 5.) Respondents argue that this claim is unexhausted because it was not presented as a federal claim to the state courts. (Answer at 13.) In support of this position, Respondents point to the fact that both the Colorado Court of Appeals and the Colorado Supreme Court decided Petitioner's claim on state law grounds. (*Id.*)

    As an initial matter, Respondents' position that Petitioner's first claim was not properly raised as a federal claim in state court because the state courts' opinions rested on state law grounds is inapposite. Under *Digmon,* it is inconsequential whether the Colorado Court of Appeals and the Colorado Supreme Court decided Petitioner's claims under federal law; the requisite inquiry is whether Petitioner's first claim was *raised* as a federal law claim in state court. Once the inquiry is properly framed, the court has no trouble finding that the substance of Petitioner's claims were presented in a manner sufficient to put the state court on notice of a federal constitutional claim. In his opening brief before the Colorado Court of Appeals, Petitioner repeatedly cited *Kumho Tire Company v. Carmichael,* 526 U.S. 137 (1999), as establishing the test that the trial court failed to apply in determining whether the testimony of "known fact patterns" causing subdural hematomas was admissible. (Answer, Ex. A at 12,

17

14–15.)  Moreover, Petitioner further argued that, even if the erroneous ruling was solely based on state evidentiary rules, errors of state law can rise to the level of a federal constitutional due process violation.  (*Id*. at 16–19.)  In support of this contention, Petitioner cites *Montana v. Egelhoff,* 518 U.S. 37 (1996), and the Fifth and Fourteenth Amendments of the federal Constitution.  (*Id*. at 16.)  Accordingly, the court finds that Petitioner's first claim was raised as a federal constitutional claim in state court, and is therefore exhausted for purposes of federal habeas review.

It appears that Respondents also assert that Petitioner's first claim is barred before this court because it was not raised as a federal constitutional claim in Petitioner's *present Application*.  (Answer at 13.)  This position is somewhat more availing.  Petitioner primarily supports his first claim by asserting that the Colorado Court of Appeals was correct in deciding that the testimony of "known fact patterns" that can cause subdural hematomas was prejudicial, irrelevant, and likely to confuse or mislead the jury.  (Application at 5.)  However, the Court of Appeals' opinion rested primarily upon state evidentiary rules—namely, C.R.E. 403 and 702.  (*See* Answer, Ex. A at 6–12.)  Nonetheless, in his first claim, Petitioner also alleges that the trial court's evidentiary ruling was a "Fourteenth Amendment violation."  (Application at 5.)  Accordingly, because the court must construe Petitioner's Application liberally due to his *pro se* status, the court finds that this reference to the Fourteenth Amendment is sufficient to render Petitioner's first claim an issue of  federal constitutional law.

**B.**     ***Third Claim***

Petitioner's third claim asserts that his Equal Protection rights under the Fourteenth Amendment were violated when the trial court sentenced him under Colo. Rev. Stat. § 18–6–401(7)(c), because the statute impermissibly imposes harsher sentences where the victim is a child under twelve years old and the offender was in a position of trust.  (*Id*. at 6.) Respondents assert that this claim was not raised as a federal claim in state court.  (Answer at 15.)  In his opening brief before the Colorado Court of Appeals, Petitioner begins his argument that the disparate punishments under Colo. Rev. Stat. § 18–6–401(7)(c) are unconstitutional by pointing to the Equal Protection Clause of the Fourteenth Amendment.  (Answer, Ex. A at 21, 26.)  Although thereafter Petitioner primarily employs state case law to support his position, under *Nichols* and *Hawkins,* this initial reference to the Fourteenth Amendment was sufficient to notify the Court of Appeals that his claim raised a federal constitutional issue.  Therefore, the court finds that Petitioner raised his third claim in state court as a federal constitutional issue, and it is therefore properly exhausted pursuant to 28 U.S.C. § 2254(b)(1).

Even though Petitioner's opening brief before the Court of Appeals cited only state court cases in support of his Equal Protection argument, it does not necessarily follow that his argument in state court was based on state law.  State courts are courts of general jurisdiction, and therefore often entertain claims arising under federal law.  However, because Petitioner's reference to the Fourteenth Amendment was sufficient to notify the state court that he was raising a federal constitutional issue, this court does not address whether the cases cited by Petitioner in state court in support of this argument are based on federal law.

### C.    *Sixth Claim*

Petitioner's sixth claim asserts that his right to a jury trial was violated, and his sentence was illegally enhanced, because Colo. Rev. Stat. § 18–6–401(7)(c) impermissibly "does away" with the specific mens rea of "with intent" and "after deliberation" for first-degree murder, as found in Colo. Rev. Stat. 18–3–102(1)(a) (2000), and required that the jury find that he acted only "knowingly." (Application at 6(a).)  Respondents argue that this claim is unexhausted because Petitioner never presented this claim in state court. (Answer at 19.)  The court finds that Petitioner's sixth claim was raised in state court in his post-conviction motion.  Petitioner's third claim in his post-conviction motion asserts that his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process were violated for two reasons: (1) his sentence was impermissibly elevated because the jury was not required to make specific findings that the child victim was under the age of twelve and that Petitioner was in a position of trust and (2) the Colorado General Assembly impermissibly legislated away the requisite mens rea for a first-degree murder conviction of "with intent" and "after deliberation" and substituted the mens rea of "knowingly" on the basis of the victim's age and relationship to the defendant.  (*See* Petition for Postconviction Relief at 16–17, *Martinez,* No. 98CR5061.)  Although Petitioner's third claim for post-conviction relief incorporated two arguments into one claim, the latter of these arguments raised the same issue that Petitioner's sixth claim presents here.  Accordingly, because Petitioner's sixth claim was raised in his post-conviction motion in state court, this court does not find that Petitioner's sixth claim was unexhausted because it was not raised in state court.

## V.   PROCEDURAL DEFAULT OF FOURTH, FIFTH, AND SIXTH CLAIMS

Petitioner's fourth claim asserts that his trial counsel was ineffective, whereas his fifth claim asserts that his *Miranda* rights were violated by the investigating officers.  (Application at 6(a).)  Respondents argue that Petitioner's fourth and fifth claims[7] should be dismissed because, although they were raised in state court in his post-conviction motion, they were procedurally defaulted when Petitioner failed to timely file a notice of appeal from the trial court's denial of his post-conviction motion.  (Answer at 16–17.)  Additionally, because procedural default "substantially implicates important values that transcend the concerns of the parties to an action," *Hardiman v. Reynolds*, 971 F.2d 500, 503 (10th Cir. 1992), the court also raises *sua sponte* that Petitioner's sixth claim should be dismissed because, assuming his fourth and fifth claims were procedurally defaulted in state court, his sixth claim, which was also raised in his post-conviction motion, also would have been procedurally defaulted.

Federal habeas review is generally barred where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993).  A

---

[7] Respondents' position as to why Petitioner's fifth claim should be dismissed is unclear. First, Respondents appear to assert that Petitioner's fifth claim is barred because it was not raised in state court at all, and that Petitioner has indeed "acknowledged" that it was never raised.  (*Id.* at 18.)  However, in support of this argument, Respondents cite *Dupuy v. Butler,* 837 F.2d 699 (5th Cir. 1988), which stands for the proposition that "an applicant must present his claims before the state courts in a procedurally proper manner."  (*Id.*)  Because Petitioner clearly asserted his fifth claim in state court, albeit in his post-conviction motion rather than his direct appeal, the court addresses Respondents' position insofar as it asserts that Petitioner's fifth claim should be dismissed because it was procedurally defaulted in state court, rather than because it was not presented.

state procedural rule is independent if it clearly relies on state law, rather than federal law, as the basis for a decision. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural rule is adequate if it is "strictly or regularly followed," and the state court applies it "evenhandedly to all similar claims." *Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir. 1995) (internal citations and quotation marks omitted). In ultimately dismissing Petitioner's appeal of his post-conviction motion, the Colorado Court of Appeals held that Petitioner failed to show good cause as to why he was unable to timely file a notice of appeal, and that therefore his appeal was untimely pursuant to C.A.R. 4(b)(1). (Answer, Ex. T.) C.A.R 4(b)(1) has been applied uniformly and evenhandedly in cases featuring an appeal of Colo. R. Crim. P. 35 post-conviction motions. *See, e.g.*, *People v. Banuelos-Landa*, 109 P.3d 1039, 1041 (Colo. App. 2004); *People v. Adams*, 905 P.2d 17, 18 (Colo. App. 1995). The court finds that Petitioner's fourth, fifth, and sixth claims raised in Petitioner's present Application are duplicative of the claims raised in his post-conviction motion. Accordingly, the Colorado Court of Appeals' holding that Petitioner defaulted his post-conviction motion by failing to comply with C.A.R. 4(1)(b) constitutes an independent and adequate state ground to bar this court from reviewing his fourth, fifth, and sixth claims here.

### A.      *Exceptions to Procedural Default*

The court must next determine whether an exception to the procedural default rule applies that would allow Petitioner's fourth, fifth, and sixth claims to be heard here. Procedural default is not jurisdictional; it is grounded in comity and federalism, and therefore does not wholly bar federal habeas review in this court. *Coleman,* 501 U.S. at 730; *Jackson v. Shanks,*

22

143 F.3d 1313, 1317 (10th Cir. 1998).  Rather, if a prisoner can demonstrate "cause for the default and actual prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice" procedural default may not prevent this court from reviewing Petitioner's Application.  *Coleman*, 501 U.S. at 749–50 (internal citations and quotation marks omitted); *see also Jackson*, 143 F.3d at 1317.  However, Petitioner's *pro se* status does not exempt him from the requirement of showing either cause and prejudice or a fundamental miscarriage of justice.  *Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

In his Traverse, Petitioner asserts that, to the extent that his claims have been procedurally defaulted in state court, he should be excused from this default, pursuant to the cause and prejudice exception, because the trial court's failure to serve him with the order denying his post-conviction motion prevented him from complying with C.A.R. 4(b)(1). (Traverse at 6.)  In order to meet the "cause" element of the cause and prejudice standard, a petitioner must show that "some objective factor external to the defense" caused his failure to properly raise his federal constitutional claims in state court.  *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Lepiscopo*, 38 F.3d at 1130.  Cause may be established, for example, by showing that "the factual or legal basis for a claim was not reasonably available to counsel" or that there was "some interference by officials that made compliance impracticable."  *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997) (internal quotations mark and citations omitted).  To meet the prejudice prong, a prisoner "must show 'actual prejudice' resulting from the errors of which he complains."  *Johnson v. Champion,* 288 F.3d 1215, 1227 (10th Cir. 2002) (quoting *United States*

*v. Frady,* 456 U.S. 152, 168 (1982)).  Being deprived of a right to appeal presumptively

constitutes prejudice.  *Id.* at 1228; *see also Abels v. Kaiser*, 913 F.2d 821, 823 (10th Cit. 1990).

The court agrees with Petitioner that the same reasons justifying an equitable tolling of

the statute of limitations also justify the invocation of the cause and prejudice exception to the

procedural default of his fourth, fifth, and sixth claims.  As outlined above, Petitioner has

sufficiently established that the trial court failed to notify him that his post-conviction motion

was denied.  The court finds that the trial court's failure to serve Petitioner with the order

denying post-conviction relief constituted interference, outside of Petitioner's control, that made

compliance with C.A.R. 4(b)(1) impracticable if not impossible.  Given the narrow 45-day

period for filing an appeal after an order denying relief under C.A.R. 4(b)(1), in the absence of

actually being served with the order denying post-conviction relief, Petitioner could have only

avoided a procedural default by making an incredibly timely inquiry into the status of his post-

conviction motion.  Additionally, Petitioner was also actually prejudiced by the trial court's

failure to serve him with the order denying his post-conviction motion—it effectively deprived

Petitioner of the right to appeal that order.  Accordingly, the court finds that Petitioner's fourth,

fifth, and sixth claims are exempted from the procedural default incurred in state court.

Consequently, this court must address these claims on the merits.

Lastly, because Petitioner has established that the cause and prejudice exception to

procedural default does apply to his fourth, fifth, and sixth claims, the court does not address

whether the fundamental miscarriage of justice exception would also exempt him from the

procedural default incurred in state court.

24

## VI.   ANALYSIS ON THE MERITS

### A.   First Claim—Expert Testimony of "Known Fact Patterns"

Petitioner's first claim asserts that his constitutional right to a fair jury trial was violated when the trial court admitted expert testimony of "known fact patterns" that can produce subdural hematomas—one of the injuries suffered by the child—such as falls from a multi-story building or a high-speed car accident, as the testimony was prejudicial, irrelevant, and confused the jury.  (Application at 6.)  In support of his argument, Petitioner directs the court to the fact that, on direct appeal, the Colorado Court of Appeals did hold that the expert evidence of other "known fact patterns" was prejudicial, irrelevant, and confusing to the jury.  (*Id.*)  Thereafter, however, the Colorado Supreme Court reversed, holding that the evidence of other known fact patterns was admissible as providing the basis of the expert's opinion under C.R.E. 702, and reaffirmed Petitioner's conviction.  (Answer, Ex. J.)

Habeas corpus review does not ordinarily extend to reexamination of state-court determinations on the admissibility of evidence.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  Rather, "[t]he role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials."  *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).  Accordingly, an alleged evidentiary error will not entitle a prisoner federal habeas relief unless "the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997).  And a violation of fundamental

25

fairness under the Due Process Clause will not lie where an "evidentiary issue was fully and competently aired in the state courts." *Moore v. Gibson,* 195 F.3d 1152, 1167 (10th Cir. 1999) (internal omissions).

Here the trial court's admission of the evidence of other "known fact patterns" causing subdural hematomas, even if erroneous, was not so grossly prejudicial as to deny fundamental fairness. First, as the Colorado Supreme Court acknowledged in its opinion, it was readily apparent that the prosecution's expert's opinion was limited in that it did not attempt to equate the force used by Petitioner in causing the child's injuries to a fall out of a multi-story building or a high-speed motor vehicle accident. (Answer, Ex. J at 6.) Moreover, Petitioner was permitted the opportunity to cross-examine the prosecution's expert and thus had an opportunity to potentially undermine the disputed testimony. (Trial Transcript, v. 9 at 639–51, *Martinez,* No. 98CR5061.) Additionally, the trial court instructed the jury that it was not bound by any expert's testimony, and that the jury was to determine the weight to be given, if any, to expert testimony. (Jury Instructions, Instruction No. 6, *Martinez,* No. 98CR5061.) Thereafter, the evidentiary issue was further scrutinized on review before the Colorado Court of Appeals—where Petitioner indeed won a reversal—and before the Colorado Supreme Court. (*see* Answer, Ex. D, Ex. J.) Thus, it appears that the evidentiary issue as to "known fact patterns" was fully and completely vetted in the state courts. Therefore, the court finds that Petitioner has not satisfied his burden of demonstrating that the evidentiary ruling was so prejudicial as to fatally infect the trial and render it fundamentally unfair. Accordingly, the relief sought in Petitioner's first claim is properly denied.

26

**B.**      *Second Claim—Improper Use of Inconsistent Theories*

Petitioner's second claim asserts that because the arresting detectives questioned Petitioner under a theory that the child victim's death was the result of an accident, but the prosecution later argued in trial that Petitioner knowingly killed the child victim, the use of these inconsistent positions violated his constitutional right to due process.  (Application at 6.)  More specifically, Petitioner argues that because of this use of inconsistent theories, the jury could have inferred that an accidental death was sufficient to prove that Petitioner acted knowingly, and therefore Petitioner was deprived of his right to a fair jury trial.  (*Id.*)

28 U.S.C. § 2254(d) requires that federal habeas courts deny relief that is not contingent upon clearly established federal law, as set forth in the holdings of the Supreme Court, at the time the state court conviction became final.  *House v. Hatch,* 527 F.3d 1010, 1015 (10th Cir. 2008); *see also Williams v. Taylor*, 529 U.S. 362, 380 (2000).  Therefore a threshold inquiry under § 2254(d)(1) must be whether there is a clearly established federal law at issue.  *Id.* at 390.  Although the federal law at issue "need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context." *House* 527 F.3d at 1016–17 (citing *Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008)).

Petitioner does not point to any cases or other authority that support his proposition that it was unconstitutional for the prosecution to employ a theory of the case that was inconsistent with the theory employed by the investigating detectives in interviewing him.  Instead, Petitioner cites to cases where the court held that it was unconstitutional for the prosecution alone to rely on two inconsistent theories to convict co-defendants in different trials, *see, e.g., Smith v.*

27

*Groose,* 205 F.3d 1045 (8th Cir. 2000), and argues that, by analogy, the approach taken by the prosecution in his case was also unconstitutional. (Traverse at 9–11.) However, Petitioner fails to demonstrate, and the court is unable to find, that his analogy has any basis in clearly established federal law, as promulgated by the Supreme Court. Therefore, because Petitioner has failed to satisfy the threshold requirement under § 2254(d)(1) that the requested relief is contingent on clearly established federal law, Petitioner's second claim for relief is properly denied.

### C.       Third Claim—Sentencing under Colo. Rev. Stat. 18–6–401(7)(c)

Petitioner's third claim asserts that the Equal Protection Clause of the Fourteenth Amendment was violated when the trial court sentenced him under Colo. Rev. Stat. § 18–6–401(7)(c), which imposes a harsher sentence than § 18–6–401(7)(a), despite proscribing allegedly identical conduct, based solely on the distinction that the victim was a child under twelve years old, and that the offender was in a position of trust. (Application at 6.)

The Equal Protection Clause states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "'Equal protection is essentially a direction that all persons similarly situated should be treated alike.'" *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotations and emphasis omitted). Because Petitioner does not claim that the disparate sentencing scheme under § 18–6–407 relies on a "suspect classification," Petitioner must show that the statutory classification "was not reasonably related to some legitimate penological purpose" to prevail on his equal protection claim. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Under this rational basis test

28

"the challenged legislation is presumptively constitutional, and the appellant bears the 'very difficult burden' of establishing 'that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate governmental interest.'"  *Grigsby v. Barnhart*, 294 F.3d 1215, 1220 (10th Cir. 2002).

In holding that the disparate sentences imposed under Colo. Rev. Stat. § 18–6-401 were valid the Colorado Court of Appeals turned to the legislative history of the statute.  (Answer, Ex. D at 15.)  The Court of Appeals found that, in support of the greater penalties for an offender in a position of trust, "the General Assembly considered that a child is more vulnerable to abuse if an offender is known to the child or entrusted with the care of the child."  (*Id.*)  The Court of Appeals also posited that a person in a position of trust is more likely to be alone with a child, to be able to lure a child into isolation, to manipulate a child into submitting to abuse, or to prevent a child from confiding in another about the abuse.  (*Id*. at 15–16.)  Thus the Court of Appeals held that "this distinction was reasonably related to the more severe penalty associated with 18–6-401(7)(c)."  (*Id*. at 16.)  Similarly, the Court of Appeals found that the General Assembly justified that the distinction between causing the death of a child under twelve years old versus an older child on the basis that "children under the age of twelve are more vulnerable that older children."  *(Id.* at 17.)  The court therefore held that the necessity of affording such children greater protection was reasonably related to the increased penalties.  (*Id.*)  This court finds that the Colorado Court of Appeals' application of the rational basis test to Colo. Rev. Stat.

§ 18–6–401, and its subsequent conclusion that the statute was valid, was a reasonable

application of clearly established federal law under the Equal Protection Clause.  Accordingly,

Petitioner's third claim for habeas relief is properly denied.

> **D.**     ***Fourth Claim—Ineffective Assistance of Counsel***

In his Traverse, Petitioner agreed to drop all of his ineffective assistance of counsel

claims, save for one.  (Traverse at 13.)  In this remaining claim, Petitioner asserts that his trial

counsel was ineffective because he failed to investigate and present exculpatory evidence that

would have shown that the infant's death was an accident.  (*Id.*)  More specifically, Petitioner

directs the court to a television report, attached to his state post-conviction motion, which

appears to show that injuries purportedly resulting from shaking a baby can allegedly result from

other factors.  (*Id* at 13-14; *see also See* Petition for Postconviction Relief, Ex. A, *Martinez,* No.

98CR5061.)  Petitioner asserts that had his trial counsel properly investigated and discovered

this evidence, counsel would have been able to refute that Petitioner caused the child's death, or

alternatively, would have been able to negate Petitioner's culpability and show that the child's

death was an accident.  (Traverse at 14.)

To establish that counsel was ineffective, Petitioner must satisfy two elements: (1) that

counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's

deficient performance resulted in prejudice to his defense.  *Strickland v. Washington,* 466 U.S.

668, 687 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at

689.  There is a "strong presumption" that counsel's performance falls within the "wide range of

reasonable professional assistance."  *Id.*  It is the defendant's burden to overcome this

presumption by showing that the alleged errors were not sound strategy under the circumstances. *Id*. If Petitioner fails to satisfy either prong of the two-part *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *Id.* at 697. Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In denying Petitioner's ineffective assistance of counsel claim featured in his post-conviction motion, the trial court focused on the prejudice prong of the *Strickland* test. (Order Denying Defendant's Motion for Post-Conviction Relief at 2–3, *Martinez,* No. 98CR5061.) More specifically, the trial court observed that Petitioner had admitted not only to shaking the child victim, but also to striking her head against the crib as well. *(Id*.) Thus, because Petitioner made this admission, the trial focused not on whether Petitioner had caused the child's death, but rather whether striking the child's head against the crib was an accident. (*Id*.) Therefore, the trial court held that a failure to investigate and discover the television report attached to Petitioner's post-conviction motion would have had no influence on the outcome of the trial as causation was not in dispute during Petitioner's trial. (*Id*.) This court finds that the trial court's application of the prejudice prong under *Strickland* was not an unreasonable application of clearly established federal law. First, to the extent that Petitioner argues that the discovery of the television report would have affected the outcome of the trial, his position is unavailing. The coroner determined that the cause of the child's death was a blunt trauma to the head. (Answer, Ex. D at 2.) Thus, even if the television report could have effectively negated the possibility that child's injuries were a result of Petitioner's shaking her, this evidence would still fail to negate

31

the fact that Petitioner's striking the child's head against the crib resulted in numerous injuries, including the cause of death—a blunt trauma to the head.  Consequently, consistent with the trial court's holding, even assuming Petitioner's trial counsel was unreasonable in not investigating and discovering the television report on shaken baby syndrome, the prejudice arising therefrom would not rise to the level of a reasonable probability that the outcome would be different.

Lastly, to the extent that Petitioner also alleges that had counsel discovered the television report it would have demonstrated that the child's death was an accident, this issue was not considered by the trial court, and therefore is not properly exhausted for purposes of federal habeas review.  Nonetheless, this court fails to comprehend how investigating and discovering a television report that purports to show that a child's injuries may have been the result of factors other than shaking the child would show that the injuries *actually caused* by Petitioner's actions were an accident.

Accordingly, the court finds that Petitioner has failed to demonstrate that the trial court unreasonably applied the prejudice prong of the *Strickland* test in dismissing his post-conviction claim of ineffective counsel.  Therefore, Petitioner's fourth claim for habeas relief is properly denied.

> ### E.   *Fifth Claim—Lack of Miranda Advisement*

Petitioner's fifth claim asserts that his Fifth Amendment rights were violated when he was interrogated without the benefit of a *Miranda* advisement, and then statements derived from this pre-*Miranda* interrogation were used to obtain a confession from Petitioner.  (Application at 6(a).)  The trial court denied Petitioner's claim as being false, finding that, according to the trial

32

testimony of the arresting officer, Petitioner had indeed been advised of his *Miranda* rights at the time of his arrest, and that the videotaped interview of Petitioner shows that Petitioner was again advised of his *Miranda* rights when he arrived at the police station, and he further acknowledged that he had been advised of his *Miranda* rights upon being arrested.  (Order Denying Defendant's Motion for Post-Conviction Relief at 3–4, *Martinez,* No. 98CR5061.)

The trial court's findings of fact that Petitioner was twice given a proper *Miranda* advisement are entitled to a presumption of correctness.  Thus, by making merely conclusory allegations that he was not advised of his *Miranda* rights at the time he was put into custody, and that those statements were later used against him to obtain a confession, Petitioner has failed to satisfy his burden of demonstrating "by clear and convincing evidence" that he was not advised of his rights.  Nonetheless, a review by this court of the state court record confirms the trial court's findings that Petitioner was properly advised of his *Miranda* rights at the time of his arrest and again at his videotaped interview.  (*See* People's Response to Defendant's Motion for Post-Conviction Relief, Ex. 2 ( "Recorded Interview with Stephen Martinez") at 3–4, *Martinez,* No. 98CR5061.)  Accordingly, Petitioner's fifth claim for relief in this respect is properly denied.

F.     ***Sixth Claim—Violation of Jury Trial Right on Elements Necessary To Constitute First-Degree Murder***

Petitioner's sixth claim maintains that he was deprived of his right to a jury trial on all the elements necessary to constitute first-degree murder when the Colorado General Assembly "legislated away" the mens rea necessary for a conviction of first-degree murder.  Petitioner

33

argues that Colo Rev. Stat. § 18–3–102(1)(f) permits a conviction of first-degree murder when a person has only acted "knowingly," when otherwise Colo. Rev. Stat. § 18–3–102(1)(a) requires that a person act "with intent" and "after deliberation" to be convicted of first-degree murder. (Application at 6(a).)  More specifically, Petitioner argues that his sentence was unconstitutionally enhanced under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Blakely v. Washington,* 542 U.S. 296 (2004), which provide that the legislature may not "remove from the jury the assessment of facts which increase the prescribe range of punishment a defendant is exposed to." (Traverse at 15–16.)  Additionally, in his Traverse, Petitioner argues assuming that *Apprendi* and *Blakely* do not justify relief, his sixth claim "may also best be addressed as an equal protection claim." (*Id.* at 16–17.)  The trial court denied this claim—as raised in Petitioner's post-conviction motion—holding that Petitioner had been sentenced to life imprisonment, which was well within the presumptive sentencing range for first-degree murder pursuant to Colo. Rev. Stat. § 18–1.3–401 (2000), and that therefore any claim that his sentence was illegally enhanced beyond the prescribed range was misplaced. (Order Denying Defendant's Motion for Post-Conviction Relief at 4, *Martinez,* No. 98CR5061.)

The trial court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law primarily because Petitioner's reliance on *Apprendi* and *Blakely* is misplaced.  A sentence may be unconstitutionally enhanced under *Apprendi* where a criminal defendant is sentenced to a term *beyond* the statutorily prescribed range, based on factual findings not admitted to by Petitioner or found beyond a reasonable doubt by a jury.  530 U.S. at 489; *see also Blakely,* 542 U.S. at 303.  Here, Petitioner was sentenced within the

statutorily prescribed range for first-degree murder, which is indisputably the crime the jury convicted him of.  Therefore, the trial court properly held that Petitioner's sentence was not illegally enhanced pursuant to *Apprendi* and *Blakely*.

To the extent that Petitioner attempts to argue that the state legislature cannot "legislate away" the mens rea of "with intent" and "after deliberation" for first-degree murder, and instead provide a lower mens rea of "knowingly," the court finds no clearly established federal law in support of this position.  Lastly, to the extent that Petitioner attempts to convert his sixth claim from alleging a due process violation to instead allege an equal protection violation in his Traverse, the court will not considered this reformulated claim, as "a Traverse is not the proper pleading to raise additional grounds for relief."  *Loggins v. Hannigan,* 45 F. App'x 846, 849 (10th Cir. 2002) (quoting *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994).  Accordingly, Petitioner's sixth claim for habeas relief is properly denied.

WHEREFORE, for the foregoing reasons, I respectfully

**RECOMMEND** that the habeas corpus application be DENIED and the action be DISMISSED WITH PREJUDICE.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Petitioners waived their right to appeal the Magistrate Judge's ruling).  *But see,*

*Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not

apply when the interests of justice require review).

      Dated this 14th day of July, 2009.

                        **BY THE COURT:**

                        Kathleen M. Tafoya
                        United States Magistrate Judge