IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 07-cv-01305-CMA-KMT

STEPHEN MARTINEZ,

    Petitioner,

v.

STEVE HARTLEY, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER ADOPTING AND AFFIRMING JULY 14, 2009 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the July 14, 2009 Recommendation by Magistrate Judge Kathleen M. Tafoya that Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 be denied. (Doc. # 29.) Petitioner filed his Objections on August 13, 2009. (Doc. # 32.) In light of the Objections, the Court has conducted the requisite *de novo* review of the issues, the Recommendations, and Petitioner's Objections. For the reasons stated below, the Court AFFIRMS and ADOPTS the Magistrate Judge's Recommendation, and this case is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

The facts are detailed within the Magistrate Judge's Recommendation, which the Court incorporates herein. The Court will provide only a brief overview of the facts and procedural history and will expand on them, if necessary, within the analysis.

Petitioner Stephen Martinez is currently serving a life sentence in the Limon Correctional Facility. (Doc. # 2 at 10.)[1] In October 1998, Petitioner was babysitting his girlfriend's four-month old baby and called 911 because the baby was choking. (Doc. # 10-4 at 3.) The baby died at the hospital later that day from a brain injury, which had caused the choking. (*Id.*) Petitioner later admitted to shaking the baby and claimed he accidently hit the baby's head against her crib. (*Id.*) He was charged with first-degree murder of a child under the age of 12 by a person in a position of trust pursuant to sections 18-6-401(7)(c) and 18-3-102(1)(f) of the Colorado Revised Statutes, and on January 7, 2000, a jury found him guilty. (Doc. # 10 at 4.) The court sentenced Petitioner to life in prison without the possibility of parole. (Doc. # 2 at 2.)

Petitioner appealed his conviction in state court. He won a reversal before the Colorado Court of Appeals based on improperly admitted expert testimony;[2] however, the Colorado Supreme Court reversed.[3] (*Id.* at 2-3.) On remand, the Colorado Court of Appeals denied another ground for retrial raised in his appeal, and the Colorado

---

[1] All page references are to the numbering used by the Court's CM/ECF docketing system.

[2] Published at 51 P.3d 1046 (Colo. App. 2001).

[3] Published at 74 P.3d 316 (Colo. 2003).

Supreme Court denied *certiorari* as to that ground. (Doc. ## 10-14; 10-16.) Petitioner then challenged his conviction in the trial court pursuant to Colo. R. Crim. P. 35(c); the trial court denied his motion. (Trial R. vol. 1, Order Denying Defendant's Motion for Post-Conviction Relief, May 12, 2005.) Petitioner appealed to the Colorado Court of Appeals, but his appeal was denied because he filed his appeal out of time. (Doc. # 10-20.) The Colorado Supreme Court then denied Petitioner's petition for *certiorari*. (Doc. # 2 at 12.)

On June 20, 2007, Petitioner commenced the present case pursuant to 28 U.S.C. § 2254. (Doc. # 2.) Petitioner asserts six claims for *habeas corpus* relief: (1) his Fourteenth Amendment right to a fair trial was violated because the trial court admitted prejudicial expert testimony; (2) his Fourteenth Amendment right to a fair trial was violated because the investigating officers and prosecutors used inconsistent theories to convict him; (3) his Fourteenth Amendment right to equal protection was violated because he was sentenced under section 18-6-401(7)(c) of the Colorado Revised Statutes; (4) his Sixth Amendment right to effective assistance of counsel was violated because his trial court counsel did not investigate and present exculpatory evidence; (5) his Fifth Amendment rights were violated when he was not advised of his rights pursuant to *Miranda*; and (6) his Sixth Amendment right to a trial by jury was violated because he was impermissibly sentenced. (Doc. # 2 at 5-7.)

On August 16, 2007, Respondents filed their Answer (Doc. #10), and on September 12, Petitioner filed his Traverse (Doc. # 14). On July 14, 2009, Magistrate

3

Judge Tafoya issued her Recommendation. (Doc. # 29.) She found that Petitioner's action was timely and that he had exhausted his state remedies. (*Id.* at 9-24.) She thus addressed Petitioner's claims on the merits and recommended that each claim be dismissed. (*Id.* at 24-35.)

On August 13, 2009, Petitioner filed his Objections to Magistrate Judge Tafoya's Recommendation. (Doc. # 32.) He accepts her Recommendations as to timeliness and exhaustion. (*Id.* at 1-2.) He further accepts her Recommendation that his third claim for relief be dismissed. (*Id.* at 6.) He objects to the Recommendation that the rest of his claims be dismissed. (*Id.* at 2-10.)

## II. STANDARD OF REVIEW

### A. *PRO SE* PETITIONER

Because Petitioner is proceeding *pro se*, the Court recognizes that he is entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Where the Court "can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so," regardless of the petitioner's confusion of legal theories or unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the Court cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Id.*

4

## B. RECOMMENDATION OF MAGISTRATE JUDGE

When a Magistrate Judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A proper objection must be filed within fourteen days of the Magistrate Judge's recommendations, Fed. R. Civ. P. 72(a), and must be specific enough to enable the "district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). "In the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

## C. STANDARD OF REVIEW FOR *HABEAS* PETITIONS UNDER 28 U.S.C. § 2254

For the purposes of *habeas* review, federal courts are limited to determining if a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for writ of *habeas corpus* may be issued only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) has two parts. With respect to the "contrary to" phrase in § 2254(d)(1),

> a state court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases; or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. The word contrary is commonly understood to mean diametrically different, opposite in character or nature, or mutually opposed.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (internal quotation marks and citations omitted). Federal law is clearly established by the Supreme Court in its holdings, as opposed to the dicta. *Id.* at 1015 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). These holdings must be construed narrowly. *Id.*

With respect to the "unreasonable application" phrase in § 2254(d)(1),

> a state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

6

*Id.* at 1018 (internal citations omitted). This inquiry is an objective one. *Williams v. Taylor*, 529 U.S. 362, 409 (2000). "[A] federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to issue a writ of *habeas corpus* only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and the Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).

The Court owes deference to the state court's result if the court reached the merits of the Petitioner's claim, even if the court did not analyze the claim under federal law. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999). Finally, if the state courts failed to adjudicate a federal claim raised by the Petitioner, the Court considers

the claim *de novo* and the deferential AEDPA standard of review does not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  ANALYSIS

The Court will first address whether Petitioner's *habeas* petition fails because it is untimely under 28 U.S.C. § 2254(d) or because Petitioner did not exhaust his state remedies required by 28 U.S.C. § 2254(b)(1)(A).  The Court will then turn to the merits of each of Petitioner's claims for *habeas* relief.

**A.     TIMELINESS AND EXHAUSTION OF STATE REMEDIES**

Magistrate Judge Tafoya found that Petitioner's claims were timely because he is entitled to an equitable tolling of the statute of limitations, and she found that he had exhausted his state remedies.  (Doc. # 29 at 9-24.)  No party filed objections as to these findings.  Therefore, the Court reviews these aspects of the Recommendation only for clear error.  *See* Fed. R. Civ. P. 72 advisory committee's note.  Finding no clear error, the Court holds that Petitioner's claims are timely and that he exhausted his state remedies.

**B.     PETITIONER'S CLAIMS FOR RELIEF**

    1.     <u>Evidentiary Error Resulting in an Unfair Trial in Violation of the Fourteenth Amendment</u>

Petitioner's first claim for relief is that expert testimony about known fact patterns that caused subdural hematomas, an injury the victim suffered, in babies should not

8

have been admitted.[4]  (Doc. # 14 at 7.)  Petitioner argues that the testimony was misleading and prejudicial because it allowed the jury to assume that force similar to a car crash is required to cause the baby's injuries.  (*Id.*)  This evidence therefore denied him a fair trial as required by the Fourteenth Amendment.  (*Id.*)  He asserts that the Colorado Court of Appeals properly found that this evidence was inadmissible and thus made the correct decision in reversing his conviction and ordering a new trial.  (Doc. # 2 at 5.)  The Magistrate Judge recommended this claim be denied as the alleged evidentiary error did not fatally infect the trial, in particular, because the expert testimony did not equate the force Petitioner used on the baby to car crashes or falls from multiple-story buildings.  (Doc. # 29 at 26.)  Petitioner objects (Doc. # 32 at 2), and the Court has therefore conducted a *de novo* review.

On *habeas* review, a federal court cannot overturn a conviction merely because the trial court improperly admitted evidence.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  "When the admission of evidence in a state trial is challenged on federal *habeas*, the question is whether the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997).  In other words, the error must have influenced the outcome of the trial.  *Loggins v. Hannigan*, 45 F.

---

[4] The testimony Petitioner believes was improperly admitted was that babies have been found to suffer subdural hematomas after a car crash or a fall from a multiple-story building. (Trial R. vol. 9, 626, Jan. 6, 2000.)

9

App'x 846, 849 (10th Cir. 2002) (unpublished) (citing *Moore v. Gibson*, 195 F.3d 1152, 1167 (10th Cir. 1999)).

In the present case, this alleged error did not fatally infect the trial because it was readily apparent that the expert's opinion was limited in that it did not attempt to equate the force allegedly used by Petitioner in causing the baby's injuries to a fall out of a multiple-story building or a car crash. When the expert testified about known fact patterns that led to subdural hematomas, she qualified her testimony by saying "we can[not] take babies and shake them" to find how much force is necessary for a baby to sustain a subdural hematoma, and she did not say that the force Petitioner used was similar to a car crash or fall from a multiple-story building. (Trial R. vol. 9, 626, Jan. 6, 2000.) Similarly, when the prosecutor talked about this expert's testimony in the closing argument, he also qualified his argument by saying "we can[not] experiment on little children to find" the amount of force necessary to cause a subdural hematoma. (Trial R. vol. 10, 730, Jan. 7, 2000.) Moreover, Petitioner had the opportunity to cross-examine the expert and thus had an opportunity to undermine her testimony. (Trial R. vol. 9, 639-51, Jan. 6, 2000.) Finally, the trial court instructed the jury that it was not bound by any expert's testimony, and it could determine the weight to give to any expert's testimony. (Trial R. vol. 1, Jury Instruction No. 6, Jan. 7, 2000.) As such, the alleged error did not fatally infect the trial or violate Petitioner's Fourteenth Amendment right to a fair trial. *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997). Therefore, Petitioner's first claim for relief is without merit.

2. <u>Use of Inconsistent Theories in Violation of the Fourteenth Amendment</u>

Petitioner's second claim for relief is that the police obtained his confession by telling Petitioner that they believed the baby's death was an accident but that the prosecutor charged with him deliberately killing the baby. (Doc. # 14 at 10.) He argues that this use of inconsistent theories violates his right to due process. (*Id.*) He further argues that the police promised him that he would not be charged with deliberately killing the baby and this promise binds the prosecutors as well. (*Id.*) The Magistrate Judge recommended denying this claim because she found no clearly established federal law establishing that this practice is unconstitutional. (Doc. # 29 at 27-28.) Petitioner objects (Doc. # 32 at 4), and the Court has therefore conducted a *de novo* review.

A petitioner seeking federal *habeas* review must first establish that there is clearly established federal law at issue. 28 U.S.C. § 2254(d)(1). Petitioner argues that the prosecutor's theory of the case was inconsistent with the theory employed by the detectives who interviewed him, and this is unconstitutional. (Doc. # 14 at 10.) However, there is no clearly established law promulgated by the Supreme Court establishing that such conduct is unconstitutional. Petitioner argues that *Bradshaw v. Stumpf* establishes that this conduct violates the Due Process Clause. 545 U.S. 175 (2005). *Bradshaw*, however, is distinguishable. It involved the prosecutors use of two inconsistent theories to convict co-defendants in two different trials. *Id.* at 187. Morever, in *Bradshaw,* the Supreme Court did not hold that the prosecutors violated due

11

process by using inconsistent theories; rather, the Court remanded the case to the Court of Appeals for it to decide whether this conduct violated due process. *Id.* Thus, *Bradshaw* does not clearly establish that Petitioner's due process rights were violated. Petitioner's citation to numerous circuit court cases is similarly unavailing. (Doc. # 14 at 9-10.) Again, these cases stand only for the proposition that using two different theories in two separate trials to convict two different defendants violates due process. *See, e.g.*, *Smith v. Grosse*, 205 F.3d 1045, 1052 (8th Cir. 2000). Even if these cases were not distinguishable from the instant case, they are not Supreme Court cases and, therefore, do not clearly establish federal law for the purposes of *habeas* review. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

As to Petitioner's claim that the police promised him he would be charged only with accidently killing the baby, there is no factual basis for this claim. The police detective who testified at trial did not testify that he promised Petitioner would be charged only with accidently killing the baby. (*See* Trial R. vol. 9, 576-79, Jan. 5, 2000.) Moreover, the transcript of Petitioner's confession contains no indication that the police promised him that he would be charged only with accidently killing the baby. (*See* Trial R. vol. 1, Interview Tr. 53-88, Oct. 18, 1998.) To the contrary, the transcript demonstrates that the interviewing officer told Petitioner that the district attorney, not the police, would decide what to charge Petitioner with. (*Id.* at 54:4-8.) As such, there is no evidence supporting Petitioner's argument that the police promised him he would not be

charged with deliberately murdering the baby. Therefore, Petitioner's second claim does not entitle him to *habeas* relief.

3. <u>Sentencing Under Colo. Rev. Stat. § 18-6-401(7)(c) In Violation of the Equal Protection Clause</u>

Petitioner's third claim for relief is that sentencing under section 18-6-401(7)(c) of the Colorado Revised Statutes violates the Equal Protection Clause of the Fourteenth Amendment. (Doc. # 2 at 6.) He argues that section 18-6-401(7)(c) and section 18-6-401(7)(a) proscribe identical conduct, but section 18-6-401(7)(c) nevertheless imposes a harsher sentence based solely on the distinction that the victim was under the age of twelve and that the offender was in a position of trust. (*Id.*) He argues that this violates his Fourteenth Amendment equal protection rights because there is no rational basis for this distinction. (*Id.*) Magistrate Judge Tafoya recommended denying this claim for relief because she found that the Colorado Court of Appeals' application of the rational basis test and conclusion that the distinction between the two sections served a legitimate penological purpose was a reasonable application of clearly established federal law. (Doc. # 29 at 30.) Petitioner did not object to this recommendation. (Doc. # 32 at 6.) Therefore, the Court reviews this aspect of the Recommendation only for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note. The Court agrees with the Magistrate Judge and the Colorado Court of Appeals that the increased penalty is supported by a rational basis which furthers a legitimate penological purpose. Thus, the Court finds no clear error in the Magistrate Judge's Recommendation on this claim, and the Court denies Petitioner's third claim.

### 4. Ineffective Assistance of Counsel

Petitioner's fourth claim for relief is that his trial counsel was ineffective because they failed to investigate and present exculpatory evidence. (Doc. # 14 at 13.) He argues that if his counsel had investigated evidence from a television report that shaking a baby does not generate enough force to kill a baby, they could have demonstrated that Petitioner did not act with the requisite *mens rea* to be convicted of first-degree murder. (Doc. # 32 at 7.) The Magistrate Judge recommended denying this claim because she found that this television report would not negate the jury finding that Petitioner acted knowingly when he caused the baby's death. (Doc. # 29 at 32.) Petitioner objects (Doc. # 32 at 6); the Court has therefore conducted a *de novo* review.

To establish that his trial counsel was ineffective, Petitioner must satisfy two elements: (1) his trial counsel was not "reasonably competent," *i.e.*, his counsel did not act "within the range of competence demanded of attorneys in criminal cases," and (2) his trial counsel's performance resulted in prejudice to the defense, *i.e.*, but for his counsel's unreasonable errors, the "result" of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance was effective, and Petitioner bears the burden of rebutting this presumption. *Id.*

The trial court addressed and denied this claim in its order denying Petitioner's motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c). (Trial R. vol. 1,

14

Order Denying Defendant's Motion for Post-Conviction Relief, 1-3, May 12, 2005.) The court correctly applied the *Strickland* test to determine that counsel's failure to investigate evidence that babies cannot die from shaken baby syndrome did not render counsel ineffective. (*Id.* at 2.) The trial court focused on the second element of the *Strickland* test (prejudice) and found that because causation was not an issue at trial, not introducing this evidence was immaterial to the outcome. (*Id.*) Petitioner disagrees and argues in his Objections that, if counsel had discovered this report, they could have proven that Petitioner did not act knowingly. (Doc. # 32 at 7.) However, if Petitioner's trial counsel had discovered this report, it would have demonstrated only that the baby did not necessarily die from shaken baby syndrome. It would not have negated the jury's finding that Petitioner acted knowingly in causing the baby's death when he hit the baby's head against the crib. As such, the trial court's application of the prejudice prong of *Strickland* was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

     5.     <u>Lack of *Miranda* Advisement</u>

Petitioner's fifth claim for *habeas* relief is that the police failed to give Petitioner his *Miranda* advisement when he was arrested. (Doc. # 2 at 7.) He claims that he was interrogated directly after he was arrested and that statements he made during the interrogation were later used against him in an interview after he was given his *Miranda* advisement. (*Id.*) He argues that this practice is unconstitutional as stated in *Missouri v. Seibert*, 542 U.S. 600 (2004). (Doc. # 32 at 8.) The Magistrate Judge recommended

denying this claim because she found that Petitioner was given his *Miranda* advisement when he was arrested and thus *Seibert* does not apply to Petitioner. (Doc. # 29 at 33.) Petitioner objects (Doc. # 32 at 8.); the Court has, therefore, conducted a *de novo* review.

The trial court found that Petitioner's allegation regarding the police's failure to give Petitioner his *Miranda* advisement was factually incorrect. (Trial R. vol. 1, Order Denying Defendant's Motion for Post-Conviction Relief, 3-4, May 12, 2005.) The trial court found that Petitioner was given his *Miranda* advisement when he was arrested and, therefore, denied this claim. (*Id.*) The trial court's findings of fact are entitled to a presumption of correctness. *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). In order for the Court to grant *habeas* relief, Petitioner must demonstrate by clear and convincing evidence that the trial court's factual determinations are erroneous. *Id.* Petitioner relies on "his collective memory" to demonstrate that the trial court was incorrect when it found that Petitioner was given his *Miranda* advisement when he was arrested. (Doc. # 14 at 15.) That is not clear and convincing evidence that the trial court's factual determination is incorrect. A review of the trial record demonstrates that Petitioner received his *Miranda* advisement when he was arrested and before he gave any inculpatory statements to the police. (Trial R. vol. 9, 559, Jan. 6, 2000.) As such, Petitioner's fifth claim for habeas relief also fails.

6. <u>Violation of Right to Jury Trial on Elements Necessary for First-Degree Murder</u>

Petitioner's final claim is that he was denied the right to a jury trial on all of the elements necessary for first-degree murder. (Doc. # 2 at 7.) He argues that in order to be convicted of first-degree murder under section 18-3-102 of the Colorado Revised Statutes, a jury must have found him to act with intent to cause a person's death after deliberation, and he was convicted of first-degree murder even though the jury found that he acted knowingly. (*Id.*) He argues that the enhancement of his sentence to life in prison was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because there was no jury finding that he acted with the necessary *mens rea* to be sentenced to life in prison pursuant to Colorado's first-degree murder statute. (Doc. # 32 at 10.) He also argues that the Colorado General Assembly impermissibly "legislated away" the *mens rea* necessary for a conviction of first-degree murder. (Trial R. vol. 1, Defendant's Petition for Postconviction Relief Pursuant to Crim. P. 35(c), 17, Dec. 4, 2004.) The Magistrate Judge recommended denying this claim because there is no clearly established federal law in support of Plaintiff's argument that the Colorado General Assembly cannot change the *mens rea* required for a defendant to be convicted of first-degree murder to knowingly. (Doc. # 29 at 34-35.) She found that *Apprendi* does not apply as Petitioner was sentenced within the statutory range for first-degree murder. (*Id.*) Petitioner objects (Doc. # 32 at 8), and the Court has, therefore, conducted a *de novo* review.

Petitioner's argument that the trial court's determination on this claim was contrary to clearly established federal law is incorrect for several reasons. First, Colorado's first-degree murder statute does not mandate that a defendant must act after deliberation with intent to cause a person's death in order to be convicted of first-degree murder; a defendant could also "knowingly cause the death of a child who has not yet attained twelve years of age and" be "in a position of trust with respect to the" child, for example, and be guilty of first-degree murder. *Colo. Rev. Stat.* § 18-3-102(1)(f) (2008). As such, Petitioner's argument that, in order to be guilty of first-degree murder, he must have been found by a jury to have acted with intent to kill after deliberation is incorrect.

Second, Petitioner's argument that the Colorado General Assembly cannot "legislate away" the *mens rea* of with intent and after deliberation for first-degree murder, and instead provide a lower *mens rea* of knowingly, is unavailing. (Trial R. vol. 1, Defendant's Petition for Postconviction Relief Pursuant to Crim. P. 35(c), 17, Dec. 4, 2004.) There is no clearly established federal law in support of his argument.

Third, Petitioner's reliance on *Apprendi* is misplaced. In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In the instant case, a jury found beyond a reasonable doubt that Petitioner acted knowingly, that he caused the death of a child under twelve, and that he was in a position of trust with respect to that child. (Trial R. vol. 10, 751, Jan. 7, 2000.) Thus, Petitioner was found guilty of first-

degree murder pursuant to section 18-3-102(1)(f) of the Colorado Revised Statutes, a class-one felony that carries a sentence of life in prison or death. *Colo. Rev. Stat.* § 18-1.3-401 (2008). His sentence was not unconstitutionally enhanced by a judge finding aggravating facts that a jury did not find beyond a reasonable doubt. Therefore, Petitioner's final claim for *habeas* relief is denied.

### IV. CONCLUSION

Magistrate Judge Tafoya's Recommendation (Doc. # 29) is AFFIRMED and ADOPTED, and Petitioner's Objections (Doc. # 32) are OVERRULED. Petitioner's Application for a Writ of Habeas Corpus (Doc. # 2) is DENIED and this case is DISMISSED WITH PREJUDICE. Finally, it is ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because Petitioner has not made a substantial showing of the denial of a constitutional right.

DATED: August __10__, 2010

BY THE COURT:

_Christine M Arguello_
_____
CHRISTINE M. ARGUELLO
United States District Judge